**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MANUFACTURED HOME COMMUNITIES
INC., a corporation,
            *Plaintiff-Appellant,*

    v.

COUNTY OF SAN DIEGO; DIANNE
JACOB,
            *Defendants-Appellees.*

No. 05-56401

D.C. No.
CV-03-02342-
NAJ/BLM

MANUFACTURED HOME COMMUNITIES
INC., a corporation,
            *Plaintiff-Appellant,*

    v.

COUNTY OF SAN DIEGO; DIANNE
JACOB,
            *Defendants-Appellees.*

No. 05-56559

D.C. No.
CV-03-02342-NAJ

OPINION

Appeal from the United States District Court
for the Southern District of California
Napoleon A. Jones, District Judge, Presiding

Argued and Submitted
February 7, 2007—Pasadena, California

Filed March 6, 2008

Before: Cynthia Holcomb Hall, Diarmuid F. O'Scannlain,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge O'Scannlain;
Dissent by Judge Callahan

2045

## COUNSEL

David J. Bradford, Jenner & Block LLC, Chicago, Illinois, for the plaintiff-appellant; Elliot L. Bien, Bien & Summers LLP, Novato, California, was on the briefs.

William A. Johnson, Jr., Senior Deputy, San Diego, California, for the defendants-appellees; John J. Sansone, County Counsel, County of San Diego, and James M. Chapin, Senior Deputy, San Diego, California, were on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether a county supervisor's hostile public statements directed at a company owning and managing several local mobile home parks were actionable as a matter of law.

I

Manufactured Home Communities, Inc. ("MHC"), a real estate investment trust headquartered in Chicago, owns and operates mobile home parks through the United States. The three parks at issue here—Lamplighter, Rancho Valley, and Rancho Mesa—lie within unincorporated areas of San Diego County's ("County") Supervisorial District Two. At all relevant times Dianne Jacob ("Jacob") served as the county supervisor for that district.

Beginning in July 2002, MHC initiated phased rent increases at the three parks after sending 90-day notices as required by local law. In response to the rent increases, tenants of Lamplighter park contacted Jacob, leading to the following actions complained of by MHC, as summarized by the district court:

> On November 15, 2002, Jacob issued a news advisory stating that MHC was preying upon elderly tenants with fixed incomes by raising rents by 25%.

On November 16, 2002, Defendant Jacob attended a tenants meeting at Lamplighter Park, where Defendant Jacob made several allegedly false statements about [Plaintiff], including the following: (1) statements that MHC is a greedy, profit-driven company that enjoys forcing the elderly out of their homes in order to move in more expensive homes for a greater profit; (2) a statement that "it would be interesting to see" if Plaintiff had engaged in any fraudulent actions; and (3) a statement that Defendant Jacob had spoken with County Counsel and District Attorney Bonnie Dumanis, who were "very interested" in following up on whether civil or criminal actions should be pursued against Plaintiff.

In a letter dated November 18, 2002, to Plaintiff's Chairman, Sam Zell, and distributed to Lamplighter Park tenants and attached to a subsequent civil complaint, Defendant Jacob made the following allegedly false statements: (1) Plaintiff's actions were "rent gouging at its worst" and indicative of "corporate greed"; (2) some "residents have already been forced to surrender their homes"; and (3) Plaintiff's rent increase was well above the 2003 Fair Market Rent of $539 for manufactured home spaces.

On or about December 10, 2002, Defendant Jacob allegedly stated to local media that MHC had lied to the Department of Environmental Health about [Plaintiff's] clean-up effort in response to a sewage spill at Rancho Valley Mobile Home Park . . . . Defendant Jacob allegedly also stated: (1) that Plaintiff is a "bad company" and that she wanted them "out of town," (2) that they "shouldn't get away with" their lies, and (3) that she wanted "to make sure that they're cited for every single offense . . . and whatever actions need to be taken are taken, civil [sic] or criminally."

On January 9, 2003, the San Diego Union Tribune published an article with Defendant Jacob's statements "to the effect that [Plaintiff] was 'preying on older people of limited economic means,' and that she was going to 'mak[e] things even hotter for the predatory company.' "

On April 5, 2003, Defendant Jacob allegedly falsely stated to tenants that Plaintiff made a practice of buying "distressed properties with the intent to run out the older residents to bring in newer homes," and told tenants that since no rent control ordinance had been passed " 'we need to take other measures . . . like litigation.' "

On at least six other occasions in 2003, Jacob made similar statements about MHC's conduct.

On November 24, 2003, MHC filed suit against the County, lodging a variety of federal claims.[1] On December 30, 2004, MHC amended the complaint to add a federal claim against Jacob based on the alleged violation of MHC's First Amendment rights. On February 1, 2005, MHC amended its complaint a second time to add state law claims of defamation and tortious interference with prospective economic advantage, against both the County and Jacob. On May 19, 2005, the district court granted defendants' Motion to Strike State Tort Causes of Action, brought under the California anti-SLAPP ("Strategic Lawsuit Against Public Participation") law and awarded attorneys' fees to the County and Jacob on the motion to strike. And on May 25, 2005, the district court dismissed MHC's remaining claims on summary judgment.

---

[1]In a concurrently filed memorandum disposition, we affirm the district court's grant of summary judgment to defendants as to these issues. *See Manufactured Home Communities, Inc. v. County of San Diego*, Nos. 05-56401 & 05-56559 (filed March 6, 2008).

MHC timely appeals.

## II

## A

**[1]** California enacted its anti-SLAPP law in reply to a "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech." CAL. CIV. PROC. CODE § 425.16(a). The statute is designed to allow the swift dismissal of meritless claims that are aimed not at remedying legally cognizable harms but at chilling expression. To prevail on a motion to strike, a defendant must first make a *prima facie* showing that the suit arises from activity in furtherance of First Amendment rights of petition or free speech; once such a showing has been made, the plaintiff must then demonstrate a probability of prevailing on the claims. *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1110 (9th Cir. 2003).

**[2]** A threshold question as to the probability of success on the merits is whether the statements giving rise to the complaint are actionable at all. The critical determination is whether the allegedly defamatory statements "convey[ ] a false factual imputation." *Kahn v. Bower*, 284 Cal. Rptr. 244, 249 (Cal. Ct. App. 1991). But, "where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by the use of epithets, fiery rhetoric, or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Gregory v. McDonnell Douglas Corp.*, 552 P.2d 425, 428 (Cal. 1976). Ordinarily, this context-bound determination is a question of law for the court, but if the challenged statement or statements are "reasonably susceptible of an interpretation which implies a provably false assertion of fact," then they may be considered by the jury "to determine whether such an

interpretation was in fact conveyed." *Kahn*, 284 Cal. Rptr. at 250.

### B

Here, the district court found that the County and Jacob had succeeded in showing that Jacob's statements giving rise to the lawsuit were in furtherance of rights to petition or free speech, and MHC does not challenge that determination. Thus the burden fell to MHC to make a showing as to the probability of success on the merits.

On that issue, the County and Jacob asserted, and the district court agreed, that the statements giving rise to the lawsuit were merely statements of opinion, rather than provably false assertions of fact, and were therefore not actionable.[2] The district court thus granted the motion to strike. While MHC concedes that some of Jacob's statements were opinions uttered in the heat of political battle, it contends that a reasonable fact finder could find some of the statements to be actionable as provably false assertions of fact.

Specifically, MHC notes, for instance, Jacob's statement that MHC "lied to the County. Said to the County that everything was fine, the sewage situation was fixed. And, in fact, it was not." MHC argues that this statement refers to specific circumstances and times and therefore is susceptible of interpretation as a provably false assertion of fact. The district court found this statement to be "nothing more than rhetorical hyperbole and subjective opinion." Similarly, MHC argues that a reasonable person could interpret Jacob's statement that MHC "has a reputation throughout the country of running people out of older mobilehome parks, increasing the value of

---

[2]There is no categorical exemption of "opinion" from defamation law, but if in context no reasonable person would interpret the challenged statement to be conveying a false factual imputation, then the First Amendment protects the speech from liability. *Kahn*, 284 Cal. Rptr. at 249-250.

the park, and then selling it at a profit" as a falsifiable asser-
tion of fact. Finally, MHC calls attention to Jacob's claim that
the incoming District Attorney was "very interested in follow-
ing up to determine whether there are civil and/or criminal
actions that should be filed against" MHC. In these instances,
too, the district court found that the statements were not rea-
sonably susceptible of interpretation as provably false asser-
tions of fact.

[3] While the district court may have been correct in its
assessment that each of these statements is properly inter-
preted as an assertion of opinion rather than fact, a reasonable
factfinder could disagree with that assessment. It does not
seem unreasonable to imagine, for instance, that a juror could
conclude Jacob meant as a matter of fact that MHC had lied
about the sewage situation, or that she meant it as fact that
MHC had a reputation for driving out elderly tenants. Nor
does it seem unreasonable to imagine a juror interpreting a
statement about the intentions of the incoming district attor-
ney as a statement of fact, rather than mere opinion.[3] Indeed,
the district court's decision, before concluding that this state-
ment was not falsifiable, also declared that it was "not factu-
ally untrue."[4] If the district court can assess the truth or falsity

---

[3]The dissent gives persuasive reasons why a fact finder might well
regard these statements as non-actionable opinions, but that is not enough.
While we might, as fact finders, be persuaded by the dissent's arguments,
we cannot conclude that they provide the *only* reasonable interpretation of
the statements at issue, and under California law—and United States
Supreme Court precedent, *see Milkovich v. Lorain Journal*, 497 U.S. 1, 19
(1990)—we must conclude that the district court erroneously determined
that Jacob's statements were non-actionable.

[4]It is not clear whether the district court meant by calling the statement
"not factually untrue" that it was making a finding that the statement was
true as a description of the incoming district attorney's intentions or indi-
cated, as the district court also suggests, "nothing more than . . . Jacob's
strong *opinion* that [MHC's] actions *should be investigated*." We con-
clude, in any event, that MHC ought to be given the opportunity to put the
statement before a jury to determine whether an ordinary person would
have understood the statement as a factual assertion, and whether it was
false.

of the claim, that seems a strong indication that it was a provably false assertion of fact, and therefore actionable.

**[4]** Thus, as to the statements concerning these matters, we cannot declare as a matter of law that no reasonable person could construe them as provably false. Accordingly, we reverse the judgment of the district court as to these statements.[5]

**[5]** In addition, we reverse the district court's award of attorneys' fees associated with the motion to strike.

## C

The dissent disagrees with our treatment of the reasonable juror standard regarding actionable statements, and urges that the California Supreme Court gives wide latitude to judges to take such issues away from juries where the statements in question were made in the course of public debate. However, as the dissent recognizes, an essential component of an opinion is that it be "wholly subjective." *See Copp v. Paxton*, 52 Cal. Rptr. 2d 831 (1996) ("In making the distinction [between fact and opinion], the courts have regarded as opinion any broad, unfocused and wholly subjective comment.") (internal quotation removed). Even under the standard adopted by the dissent, however, a reasonable listener could conclude that Jacob's statements were founded in part on an objective, factual basis, especially in light of Jacob's role as a public servant and her having made some of the relevant statements in response to a news reporter's questions.

Likewise, we leave it to the jury to determine whether Jacob's statements were opinions based upon express facts. A reasonable juror could conclude that Jacob did not "outline[ ]

---

[5]We agree with the district court, however, that Jacob's statements that MHC is "unscrupulous" and "greedy" and engaged in "rent gouging" were the kind of heated commentary that is often part of such public debates, and are not actionable as provably false assertions of fact.

the facts available to [her]" sufficient to "mak[e] it clear that the challenged statements represent [her] own interpretation" of express facts. *Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995). Here, Jacob's statements were not clearly attached to such an outline of fact, nor did she explicitly link her statements to an express factual basis. *See id.* at 1156 (holding that statements in a published work were non-actionable opinions because they were preceded by an extensive factual discussion, such that the author "can only be said to have expressed his own opinion after having outlined all the facts that serve as the basis for his conclusion"); *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1438-40 (9th Cir. 1995) (holding that a declarant's statement was non-actionable opinion where he explicitly disclosed its factual basis). Accordingly, unlike *Partington* and *Standing Committee*, in this case a reasonable listener could conclude that Jacob "impl[ied] there are other, unstated facts supporting" her comments. *Franklin v. Dynamic Details*, 10 Cal. Rptr. 3d 429, 436, 438 (Ct. App. 2004) ("The dispositive question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.").

The dissent also would hold that MHC failed to proffer sufficient evidence to establish a probability of success on the merits. However, the district court granted Jacob's motion to strike solely on the erroneous ground that her statements were non-actionable opinions. MHC's probability of success was not addressed in the parties' briefs or at oral argument. Accordingly, we leave it to the district court to consider that issue in the first instance.

### III

For the foregoing reasons, the judgment of the district court is **REVERSED** in part, **AFFIRMED** in part, and **REMANDED** for further proceedings. The parties shall bear their own costs.

CALLAHAN, Circuit Judge, dissenting:

I respectfully dissent.

The California Legislature's explicit purpose in enacting California Code of Civil Procedure § 425.16 was to declare "that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." Cal. Code of Civ. P. § 425.16(a). Therefore, we must construe the statute broadly to protect public participation and free speech. *Id.* Manufactured Home Communities, Inc. ("MHCI") is attempting to chill the valid exercise of constitutional rights of freedom of speech and petition for the redress of grievances by filing a lawsuit against county supervisor Dianne Jacobs based on media interviews about an issue of public controversy. I would construe the statute broadly to conclude that not only were Supervisor Jacob's statements opinions in the context they were given, but also that MHCI failed to demonstrate with admissible evidence that they were factually untrue so as to show a probability of prevailing on the merits as required by Code of Civil Procedure § 425.16(b).

I agree with the majority that the County of San Diego and Supervisor Jacob demonstrated that MHCI's rent increases and operation of the mobile home park were issues of public concern. The majority identifies three potential defamatory statements: 1) that MHCI lied about fixing a sewage leak in one of their parks; 2) that MHCI enjoys driving out elderly tenants; and 3) that the district attorney was interested in investigating MHCI's operation of its mobile home parks. The majority then applies a reasonable juror standard taken from *Kahn v. Bower*, 284 Cal. Rptr. 244, 250 (Ct. App. 1991), to conclude that it is possible that Supervisor Jacob's statements are "reasonably susceptible of an interpretation which implies a provably false assertion of fact" and therefore MHCI's claims survive an anti-SLAPP motion. The majority

evaluates Supervisor Jacob's statements for whether a "reasonable person could construe them as provably false." I disagree with applying this more lenient standard when distinguishing between an opinion and an assertion of fact in ruling on an anti-SLAPP motion because Supervisor Jacob's statements were opinions based on expressed facts and because the statements were substantially true. *See Franklin v. Dynamic Details, Inc.*, 10 Cal. Rptr. 3d 429, 437-38 (Ct. App. 2004) (discussing opinions accompanied by expressed facts). When plaintiffs bring suit concerning statements about matters of public significance, they bear the burden of establishing a reasonable probability of prevailing on the merits, and MHCI has failed to satisfy its burden in this case. *See Wilson v. Parker, Covert & Chidester*, 50 P.3d 733, 739 (Cal. 2002) (explaining that a plaintiff facing an anti-SLAPP motion "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.")

## I.  Supervisor Jacob's statements were opinions based on expressed facts.

"It is an essential element of defamation that the publication be of a false statement of *fact* rather than opinion." *Eisenberg v. Alameda Newspapers, Inc.*, 88 Cal. Rptr. 2d 802, 821 (Ct. App. 1999). An opinion is any "broad, unfocused and wholly subjective comment." *Fletcher v. San Jose Mercury News*, 264 Cal. Rptr. 699, 708 (Ct. App. 1989). "Under the common law privilege of fair comment, an honest expression of *opinion* on matters of public interest is privileged." *Eisenberg*, 88 Cal. Rptr. 2d at 821. In the context of discussions of matters of public interest, "courts apply the Constitution by carefully distinguishing between statements of opinion and fact, treating the one as constitutionally protected and imposing on the other civil liability for its abuse." *Gregory v. McDonnell Douglas Corp.*, 552 P.2d 425, 428 (Cal. 1976).

When deciding whether or not a statement is an opinion as a matter of law, "the court must place itself in the position of the hearer or reader, and determine the sense or meaning of the statement according to its natural and popular construction." *Baker v. Los Angeles Herald*, 721 P.2d 87, 90 (Cal. 1986). California assesses whether statements are opinions or statements of fact by examining the totality of the circumstances with particular attention to the context of the statement. *Id*. at 90-91. "Thus, where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Gregory*, 552 P.2d at 428.

Given the context and content of Supervisor Jacob's statements, the district court properly concluded that they were statements of opinion as a matter of law. Whether published material is reasonably susceptible of an interpretation which implies a provably false assertion of fact "must be resolved by considering whether the reasonable or 'average' reader *would* so interpret the material." *Couch v. San Juan Unified Sch. Dist.*, 39 Cal. Rptr. 2d 848, 854 (Ct. App. 1995) (emphasis added). Rather than considering whether the three statements implied facts that a reasonable person *could* construe as provably false, I would affirm the district court's conclusion that, given the context and content of the statements, no reasonable person would have concluded that Supervisor Jacob was implying that she had additional, defamatory, factual information.

Supervisor Jacob made the statements that MHCI lied about a sewage spill, and that the company has a reputation for running people out of mobile home parks during interviews with television stations covering the sewage spill. In the context of the news report and the reporter's request for

Supervisor Jacob's comments on the situation and MHCI's operation of the park, a reasonable listener would conclude that her responses were opinions. *See Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1438-39 (9th Cir. 1995) (noting distinction between opinions based on implied facts and opinions based on express facts). Similarly, Supervisor Jacob's statement about talking to the County Counsel and the incoming district attorney were accompanied by Jacob's disclosure that she spoke with attorneys who were interested in investigating MHCI's management of the mobile home parks. Her interpretation of their responses is an opinion accompanied by expressed facts, not a statement that implies additional defamatory facts. *See Franklin*, 10 Cal. Rptr. 3d at 438 (discussing effect of expressed facts on statement of opinion).

In this case, each of Supervisor Jacob's opinions were accompanied by the facts she was asked to comment on, or the facts upon which she based her statement. As a result, her statements "can be punished only if the stated facts are themselves false and demeaning." *Id.* (quoting *Standing Comm.*, 55 F.3d at 1439). If the statements were accompanied by the expressed facts that formed the basis for Supervisor Jacob's opinions, whether or not a reasonable listener could have thought that the statements implied untrue facts is irrelevant because "no reasonable reader would consider the [statement] anything but the opinion of the author drawn from the circumstances related." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1992); *see also Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995) (adopting reasoning of other circuits "that when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment."). Therefore, I would affirm the district court's conclusion that under the circumstances, Supervisor Jacob's statements were opinions.

## II.   MHCI has not satisfied its burden of demonstrating a reasonable probability of prevailing on the merits.

Supervisor Jacob's statements were about matters of public concern. Therefore, the burden shifted to MHCI to show "a probability of prevailing on the claims." Cal. Code of Civ. P. § 425.16(b). The California Supreme Court has interpreted this to mean that the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson*, 50 P.3d at 739. Not only must the plaintiff demonstrate that prevailing is possible, it must demonstrate that prevailing is a "reasonable probability." *Rusheen v. Cohen*, 128 P.3d 713, 724 (Cal. 2006) (noting that "the trial court correctly found that there was no reasonable probability" of plaintiff prevailing and affirming grant of the anti-SLAPP motion); *Wilcox v. Superior Court*, 33 Cal. Rptr. 2d 446, 455 (Ct. App. 1994) (concluding that "probability" is equivalent to a "reasonable probability" of prevailing) *overruled on other grounds by Equilon Enterprises v. Consumer Cause, Inc.*, 52 P.3d 685, 694 n. 5 (Cal. 2002). If the plaintiff has the burden of proving an element of his claim under a certain evidentiary standard, then in evaluating the plaintiff's prima facie showing, a court must apply the same evidentiary standard. *See Padres v. Henderson*, 8 Cal. Rptr. 3d 584, 594 (Ct. App. 2003) ("plaintiff must make a prima facie showing of facts that would be sufficient to sustain a favorable judgment under the applicable evidentiary standard."); *Robertson v. Rodriguez*, 42 Cal. Rptr. 2d 464, 470 (Ct. App. 1995) (applying clear and convincing standard of proof where plaintiff had to prove actual malice by that standard).

In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990), the Supreme Court rejected an opinion privilege for defamation actions and concluded that if an opinion implies a provably false fact, courts should analyze "whether a reasonable factfinder could conclude" that the publication asserted the

defamatory fact. California adopted this standard for evaluating demurrers and motions for judgment on the pleading to this specific species of opinion in *Kahn*, 284 Cal. Rptr. at 250. Unlike demurrers and motions for judgment on the pleading, however, special motions to strike under the anti-SLAPP statute are evaluated based on whether, "as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Wilson*, 50 P.3d at 739. "Thus, a plaintiff's burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment." *Yu v. Signet Bank/Virginia*, 126 Cal. Rptr. 2d 516, 530 (Ct. App. 2002).

Under California law, the plaintiff must prove the falsity of the underlying, implied fact in order to survive summary judgment. *Eisenberg*, 88 Cal. Rptr. 2d at 822-23 (affirming grant of summary judgment in defamation action when plaintiff could not prove that the underlying assertions of fact were false). In this case, MHCI has not satisfied its evidentiary burden to demonstrate the falsity of any underlying facts. *See Gilbert v. Sykes*, 53 Cal. Rptr. 3d 752, 766 (Ct. App. 2007) (noting that truth defense is satisfied if the "gist" or "sting" of the statement is substantially true). The evidence submitted showed that MHCI's representatives assured county officials that plumbers and other repair work had begun on the sewage leak when the problem had not been fixed. This was reported and documented by two local television stations and confirmed by the residents of the flooded unit. Furthermore, Supervisor Jacob did online research to discover that there were complaints throughout the country about MHCI and their business practices. The disproportionate effect of MHCI's rent increases on the elderly and residents on fixed incomes was confirmed by the homeowners. Finally, the incoming district attorney testified that she was interested in investigating MHCI's activities, and the county opened a formal investigation into MHCI's handling of the sewage spill. MHCI failed to present any evidence to prove the falsity of the alleged facts it claims were implied by Supervisor Jacob's

statements. Because all of the expressed facts, and whatever facts were implied by Supervisor Jacob's statements, were "substantially true," and because MHCI failed to present any evidence that any allegedly defamatory fact was false, I would affirm the district court's order granting Supervisor Jacob's anti-SLAPP motion and the award of attorney's fees.